Ingrid T. AULT, Appellee,

v.

## GENERAL PROPERTY MANAGEMENT COMPANY, an Oklahoma corporation, Appellant.

### No. 58929.

Court of Appeals of Oklahoma, Division No. 4.

March 6, 1984.

Rehearing Denied March 30, 1984.

Certiorari Denied June 19, 1984.

Released for Publication by Order of Court of Appeals June 25, 1984.

Paul F. McTighe, Jr., Tulsa, for appellee.

Lewis C. Johnson, Tulsa, for appellant.

ŠTUBBLEFIELD, Judge.

This is an appeal from a district court order finding defendant liable to plaintiff for Uniform Consumer Credit Code violations in connection with a note assigned to defendant by an attorney. The note and securing mortgage had been obtained by the attorney from plaintiff in return for legal services.

I

In 1972, plaintiff, Ingrid Ault, contacted attorney Joseph LeDonne, Jr., in connection with her decision to seek a divorce from her husband, Howard Ault. The divorce was obtained and her ex-husband left the state. Plaintiff was then besieged by creditors to whom money was owed by the couple's business, Ault Laboratory. Plaintiff's financial troubles and the failure of the business also resulted in several criminal charges being filed against plaintiff.

LeDonne told plaintiff that he would take $1,200 to cover the cost of the divorce, initiate a bankruptcy proceeding in her behalf and take care of one of the criminal charges against her. Plaintiff informed the attorney that she did not have the money.

On January 3, 1973, LeDonne had plaintiff execute a note for $1,200, payable in monthly installments of $50 beginning Jan-

uary 3, 1975. The note was secured by a second mortgage on plaintiff's home, also executed on January 3, 1973.

On February 9, 1978, plaintiff filed a petition in the District Court of Tulsa County alleging that on or about September 1, 1977, attorney LeDonne had assigned the note and mortgage to defendant, General Property Management Company. On September 8, 1977, defendant had made demand on plaintiff for the amount due on the note. In her petition plaintiff requested that the court decree the note and mortgage canceled. In support of this prayer plaintiff took the position that any liability on the note had expired because the statute of limitations for an action on the note had run. Plaintiff went on to request the penalty imposed under 46 O.S.Supp.1977 § 15, for refusal to release the mortgage on demand. Plaintiff had made demand for release in a letter delivered to defendant on January 9, 1978.

Defendant filed an answer and cross petition on April 14, 1978. In this answer defendant denied the applicability of 46 O.S.Supp.1977 § 15, and denied that plaintiff's liability on the note had expired.

In the cross petition defendant declared that it now held the note executed by plaintiff to LeDonne and that plaintiff had failed to pay the installments due on the note. Defendant declared the note due and payable and prayed for judgment on the note.

In a second cause of action in the cross petition defendant sought foreclosure of the second mortgage on plaintiff's home.

On July 26, 1978, plaintiff filed an answer to defendant's cross petition. In this answer, plaintiff averred that she had given defendant notice of certain defenses under the Uniform Consumer Credit Code within 30 days of receiving notice of the assignment of the note to defendant. Plaintiff then alleged that LeDonne had failed to comply with the disclosure provisions of the UCCC, 14A O.S.1971 § 2–301(2), and had violated the prohibition of 14A O.S.1971 § 2–403, by taking the note as payment in a consumer credit sale. Plaintiff prayed to recover the penalties for

these violations provided for under 14A O.S.Supp.1976 § 5–203, and 14A O.S.1971 § 5–202, respectively, and for attorney fees and costs.

Trial was held in this matter to the court on March 13 and 17, 1981. At trial it was established that plaintiff had paid $1,149 to LeDonne, $645.16 of which should have been credited against the balance due on the note.

On March 15, 1982, the trial court filed its findings of facts and conclusions of law. The trial court concluded that the transaction between plaintiff and LeDonne was subject to the provisions of the Uniform Consumer Credit Code. The court found that LeDonne had regularly engaged in the sale of legal services for credit, and that the transaction had violated 14A O.S.1971 §§ 2–301(2) and 2–403. The court declared the note and mortgage to be null and void and awarded plaintiff the penalties provided under 14A O.S.1971 § 2–502, and 14A O.S.Supp.1976 § 2–503.

A journal entry of judgment embodying these findings was filed on May 19, 1982.

Defendant now appeals.

## II

On appeal defendant presents one argument—the trial court erred in finding that the transaction between plaintiff and LeDonne was subject to the provisions of the Uniform Consumer Credit Code. Under the facts of this case, we must agree.

Title 14A O.S.1971 § 2–104(1), defines a consumer credit sale as:

"Except as provided in subsection (2), 'consumer credit sale' is a sale of goods, services or an interest in land in which

   (a) credit is granted by a person who regularly engages as a seller in credit transactions of the same kind;

   (b) the buyer is a person other than an organization;

   (c) the goods, services or interest in land are purchased primarily for a personal, family or household purpose;

   (d) either the debt is payable in installments or a credit service charge is made; and

(e) with respect to a sale of goods or services, the amount financed does not exceed Forty-five Thousand Dollars ($45,000.00).

Title 14A O.S.1971 § 2–403, by its terms is applicable only in cases involving a consumer credit sale. For the purposes of the disclosure part of the UCCC the meaning of consumer credit sale is somewhat expanded. 14A O.S.1971 § 2–301(1). The expansions, however, have no applicability to the case at hand, and thus, section 2–301(2) will apply only if the transaction comes within the meaning of consumer credit sale as defined in section 2–104(1).

■ The trial court in the present case found that LeDonne had regularly engaged in the extension of credit in connection with the sale of legal services. Defendant does not argue that legal services would not come under the coverage of section 2–104(1)(d), although plaintiff presents an argument in favor of such an application. We find no reason to doubt the applicability of the provisions of the UCCC to credit sales of legal services. See *Dougherty v. Hoolihan, Neils, and Boland, Ltd.*, 531 F.Supp. 717 (D.Minn.1982).

■ We do find error, however, in the trial court's application of the definition of credit as used in the UCCC. Title 14A O.S.1971 § 1–301(7), defines credit as "the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment." The trial court found that LeDonne, in approximately 68 percent of his cases, did not take payment until the case had been concluded. On the basis of this finding the court held that LeDonne regularly extended credit. An agreement to pay upon the completion of the work contracted for does not constitute an extension of credit. See *Sealey v. Boulevard Construction Co.*, 70 Ohio App.2d 277, 437 N.E.2d 305 (1980).

■ An examination of the evidence in the present case does not reveal a basis for holding the transaction between plaintiff and LeDonne to come under the UCCC definition of a consumer credit sale. The specific transaction here involved does clearly amount to an extension of credit within the definition of section 1–301(7). To be a consumer credit sale, however, the evidence presented must establish that the seller, LeDonne, had regularly engaged in transactions of the same kind. On this point the evidence fails. The only evidence presented at trial of a transaction in which payment was actually deferred after coming due was the single transaction involving plaintiff.

At the time this case was decided there was no precise definition of the term "regularly" as used in section 2–104(1).[1] However, we do not feel that the evidence introduced by plaintiff showing only one transaction, coupled with unrebutted denials of the existence of other such transactions by LeDonne, could support a finding that the requirements of section 2–104(1), were met.

■ Because the transaction between plaintiff and LeDonne fails to meet the definition of consumer credit sale, the trial court's application of the penal provisions of the UCCC was erroneous and must be set aside. *Mercury Oil Refining Co. v. Richardson*, Okl., 296 P.2d 964 (1956).

The judgment of the trial court is reversed and the cause is remanded to the trial court with instructions to enter judgment for defendant on its cross action on the note. The record does establish, however, that plaintiff should be credited for payment of $645.16 on the note. The principal amount of the note should be reduced by this amount as of the date of payment. Upon remand judgment should be rendered accordingly.

DeMIER, P.J., concurs.

BRIGHTMIRE, J., concurs in result.

---

1. We would note that the Federal Truth in Lending Regulations (Regulation Z), effective April 1, 1982, now indicates that "regularly" would involve 25 or more such transactions in the preceding calendar year. 12 C.F.R. § 226.-2(a)(17)(i) (1982).